**UNITED STATES of America ex rel. E. A. SIMMONS for and on behalf of Delores GRAY, also known as Delores Ray, Petitioner-Appellant,**

**v.**

**Joseph D. LOHMAN and Irwin J. Blazek, Respondents-Appellees.**

**No. 11540.**

United States Court of Appeals Seventh Circuit.

Dec. 28, 1955.

Edward A. Simmons, Chicago, Ill., pro se.

John Gutknecht, Rudolph L. Janega, Chicago, Ill. (Irwin D. Bloch, John T. Gallagher, William L. Carlin, Robert E. Bryant, Asst. State's Attys., Chicago, Ill., of counsel), for appellees.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

MAJOR, Circuit Judge.

This is a proceeding wherein appellant Delores Gray (sometimes referred to as Delores Ray) sought by habeas corpus to obtain her release from custody of respondents Joseph D. Lohman, Sheriff of Cook County, Illinois, and Irwin J. Blazek, Warden of the Cook County Jail. The writ was directed to issue, appropriate pleadings were filed by the parties and, after a hearing, the court, on May 5, 1955, entered an order discharging the writ and remanded the petitioner to the custody of respondents, to be delivered to an officer or agent of the State of Michigan. From this order the appeal comes to this court.

Petitioner, in April 1951, commenced the service of an indeterminate sentence of 1½ to 4 years, imposed by a Michigan court for the crime of larceny, in the Detroit House of Correction, a Michigan penal institution. On October 6, 1952, she was released on parole from that institution for a period of 18 months, which upon compliance with its terms by petitioner would have expired April 6, 1954. Among the conditions of the parole was that she proceed to Chicago, Illinois, where she was to reside with her father, Theodore Ray, and where employment awaited her. It was also a condition that petitioner while in Chicago be under the supervision of an Illinois parole officer. It was provided that petitioner would obey the parole regulations of Illinois and Michigan, would return to Michigan when instructed to do so during the term of her parole, and agreed that for violation of her parole she could be returned to Michigan without extradition proceedings and that she would not contest any proceeding by the State of Michigan instituted for the purpose of obtaining her return.

On February 19, 1954, Michigan issued a Parole Violation Warrant for the arrest and imprisonment of petitioner for failure to comply with the conditions of her parole. In the meantime, however, petitioner was convicted in the Municipal Court of Chicago of the crime of larceny and, on March 4, 1954, was sentenced to the Cook County Jail for a term of one year, from which imprisonment she was entitled to be released on February 2, 1955. Prior to her release from this imprisonment, respondents were notified by Michigan officials to hold petitioner for return to that State as a parole violator. Respondents, awaiting the arrival of Michigan officers, held petitioner in their custody for two days after she was thus entitled to be discharged from the Cook County imprisonment. This detention was challenged by petitioner in a habeas corpus proceeding instituted in the Criminal Court of Cook County which, after hearing, quashed the writ. Subsequently the instant proceeding was instituted, which culminated in the order under attack.

Admittedly, respondents' sole justification for retaining petitioner was the

Parole Violation Warrant issued by the State of Michigan, with the request that she be returned to that State under a so-called "compact" existing between the two States. This compact, like those existing between numerous States, was entered into by authority granted by Congress under an Act of June 6, 1934. Title 4 U.S.C.A. § 111. We think it unnecessary to set forth this compact in full but·that it is enough to note that it authorizes the officials of one State to permit a person on probation or parole to reside in any other State which is a party to the compact. It also authorizes the officers of a sending State to enter the receiving State for the purpose of apprehension and retaking any person thus released on probation or parole. The compact provides that no formalities are required other than establishing the authority of the officer and the identity of the person to be retaken. The compact then provides:

> "All legal requirements to obtain extradition of fugitives from justice are hereby expressly waived on the part of the states party hereto, as to such persons. The decision of the sending state to retake a person on probation or parole shall be conclusive upon and not reviewable within the receiving state: Provided, however, That if at the time when a state seeks to retake a probationer or parolee there should be pending against him within the receiving state any criminal charge, or he should be suspected of having committed within such a state a criminal offense, he shall not be retaken without the consent of the receiving state until discharged from prosecution or from imprisonment for such offense."

■ Of the numerous contentions advanced by the petitioner the most important perhaps is that the compact provision is unconstitutional because it violates the provisions of Article IV, Section 2, Clause 2, of the Federal Constitution, concerning extradition, as well as Title 18 U.S.C.A. § 3182, enacted pursuant thereto. The contention appears to be that the constitutional provision on extradition places an absolute limitation upon the power of the States to provide or arrange for the return of a person to a State from which such person is a fugitive from justice. We think there is little, if any, merit in this contention. In the first place, Congress evidently thought that the Constitution placed no such inhibition upon the authority of the States to make agreements concerning persons on probation or parole because it expressly authorized the States to enter into such compacts. Title 4 U.S.C.A. § 111. Moreover and perhaps more important is the fact that the constitutionality of similar compacts between other States has been sustained. See Ex Parte Tenner, 20 Cal.2d 670, 128 P.2d 338, sustaining the constitutionality of a compact between California and Washington, followed and approved by the Supreme Court of Arkansas in Gulley v. Apple, 213 Ark. 350, 210 S.W.2d 514, by the Supreme Court of the State of Washington in Pierce v. Smith, 195 P.2d 112, and by the Supreme Court of Mississippi in Stone v. Robinson, 69 So.2d 206. See also Pierce v. Smith, 9 Cir., 175 F.2d 193, 194, and United States ex rel. Mac Blain v.·Burke, 3 Cir., 200 F.2d 616, 618.

■ We might add that we discern no similarity between the situation wherein a person has been released on parole or probation and that where the person commits a crime and flees from the jurisdiction. In the former situation, a person is granted permission to take up his abode in another State and enters into an agreement with the sending State which, if violated, requires his return. Having entered into such agreement, it is not discernible how or in what manner his constitutional rights are violated when it is sought, upon a violation, to obtain his return. Assuming, however, contrary to what we think, that any constitutional right is involved, it is waived by the agreement which the parolee makes with the State. Petitioner evi-

dently attempts to avoid the soundness of this reasoning because she contends that her signature to the parole agreement with the State of Michigan was procured on the false representation that it was only a receipt for personal property. On this disputed issue of fact the court heard testimony and properly, so we think, resolved it against petitioner.

Petitioner contends that Michigan was without authority or jurisdiction on February 19, 1954, to issue its Parole Violation Warrant because petitioner's Michigan sentence expired February 16, 1954 (three days previously). This argument overlooks the fact that petitioner, prior to the time her Michigan sentence might have otherwise expired and during the period for which she was released on parole, violated her parole by the commission of a crime in Chicago, for which she was imprisoned. It has often been held that a parole violator is relegated to the status existing at the time of release; in other words, he is entitled to no credit for the time spent on parole and may be compelled to serve the remainder of his sentence. See People ex rel. Barrett v. Dixon, 387 Ill. 420, 424, 56 N.E.2d 816; Anderson v. Corall, 263 U.S. 193, 196, 44 S.Ct. 43, 68 L.Ed. 247; Zerbst v. Kidwell, 304 U.S. 359, 362, 58 S.Ct. 872, 82 L.Ed. 1399.

It is argued that in any event there was a failure to prove that a valid judgment had been entered against petitioner by a Michigan court. Evidently this argument overlooks the fact that petitioner's detention is based solely upon the Parole Violation Warrant issued pursuant to an agreement made between petitioner and the State of Michigan, and in accordance with the compact existing between that State and Illinois. Any infirmities in the judgment by which petitioner was convicted are matters for the courts of Michigan and not those of Illinois.

The order appealed from is

Affirmed.